IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMIN BAILON and ROMIE ADAMS,
as Personal Representative of
the WRONGFUL DEATH ESTATE OF
JOHN THADDEUS BAILON,
and Next Friend of A.B., a Minor Child,

      Plaintiffs,

v.                                                1:20-cv-00230-LF-CG

VALENCIA COUNTY BOARD OF
COUNTY COMMISSIONERS and JOSEPH ROWLAND
and JUAN RODRIGUEZ, in both their
individual and their official capacities,

      Defendants.

## ORDER APPROVING SETTLEMENT

THIS MATTER comes before me on the parties' Joint Motion for Fairness Hearing Concerning Approval of Settlement Involving Minor Children filed August 11, 2020.   Doc. 19. The parties consented to me to make a final disposition in this case.   Doc. 19-1.   I granted the motion for a hearing and conducted a fairness hearing on August 26, 2020.   Docs. 23, 25.   For the reasons explained below, I approve the settlement agreement between the plaintiffs Jamin Bailon and Romie Adams[1] and Valencia County Board of County Commissioners, Joseph Rowland, and Juan Rodriguez (the "County Defendants") as it relates to the minor beneficiary of the wrongful death estate of John Thaddeus Bailon.

The Court reviews settlements involving minor children and incapacitated persons for fairness.   *See Thompson v. Maxwell Land-Grant and Railway Company,* 168 U.S. 451, 463–65

---

[1] Ms. Adams is acting as personal representative of the wrongful death estate of John Thaddeus Bailon and next friend of A.B., a minor child.   She is not related to Jamin Bailon, A.B., or the deceased, John Thaddeus Bailon.

(1897).   Before approving such an agreement, the Court must ensure that the minor's interests

will be adequately protected.   *See Garrick v. Weaver*, 888 F.2d 687, 693 (10th Cir. 1989) (courts

have a general duty to protect the interests of minors); FED. R. CIV. P. 17(c)(2); *see also United*

*States v. Reilly*, 385 F.2d 225, 228 (10th Cir. 1967) (When interests of minors are at stake, the

trial judge has an obligation to see that the children are properly represented by their

representatives and by the Court.).

The Court held a hearing on August 26, 2020, to determine the fairness of the proposed

settlement, and whether it was in the best interest of A.B., the minor child of John Thaddeus

Bailon, age 17.[2]   At the hearing, Philip Davis and Steven Chavez appeared on behalf of

plaintiffs.   Romie Adams appeared as personal representative of the wrongful death estate of

John Thaddeus Bailon and as next friend of A.B.   Neither Jamin Bailon nor A.B.'s mother

appeared, and counsel agreed their presence was not necessary.   Jonlyn Martinez appeared on

behalf of the County Defendants.   Counsel provided a thorough and complete recitation of the

facts of the case, the basic terms of the proposed settlement, and answered all questions to the

Court's satisfaction.   The Court also received testimony from Ms. Adams.

This case arose out of an encounter between John Thaddeus Bailon and defendants

Joseph Roland and Juan Rodriguez on January 6, 2018.   Defendants Roland and Rodriguez are

law enforcement officers with the Valencia County Sheriff's Department and were responding to

a call regarding a stolen vehicle.   During the encounter, Mr. Bailon attempted to flee by entering

the stolen vehicle and driving it.   Both officers were close by, and they fired their guns at Mr.

---

[2] The parties agreed that due to A.B.'s age, the fact that she will be 18 in February of 2021, and
the amount of the settlement, a *guardian ad litem* was not necessary and would be proportionally
too expensive given the amount of the settlement.

Bailon multiple times as the car crashed into a nearby mobile home.   The shots killed Mr.

Bailon.   John Thaddeus Bailon, the decedent, was the father of A.B.

I have considered the information and evidence presented at the hearing, and the basic

terms of the proposed settlement.   I find that the proposed settlement satisfies the four factors set

forth in *Jones v. Nuclear Pharmacy, Inc*., 741 F.2d 322, 324 (10th Cir. 1984), which the Court

considers when deciding whether to approve a settlement.   These factors are:   "(1) whether the

proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and

fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an

immediate recovery outweighs the mere possibility of future relief after protracted and expensive

litigation; and (4) the judgment of the parties that the settlement is fair and reasonable."   *Id*.   I

also find that the settlement is in the best interests of A.B., the minor child.   *Garrick*, 888 F.2d at

693.

I find that the proposed settlement in the amount of $125,000.00 was fairly and honestly

negotiated.   The parties participated in a mediation with retired Judge Alan Malott, an

experienced mediator.   Although the case did not settle during the mediation, the parties

continued to pursue a negotiated resolution to this matter.   Following discovery that appeared

damaging to plaintiffs' case, the parties were able to negotiate the settlement they now are asking

the Court to approve.

The attorneys described the settlement negotiations and mediation process, which show

that the settlement was fairly and honestly negotiated.   Ms. Adams participated in the settlement

negotiations and was in contact with counsel throughout the case.   Plaintiffs' attorney, Mr.

Chavez, was in constant contact with plaintiffs, including Jamin Bailon, Romie Adams, and

A.B.'s mother, during the settlement negotiations.   The parties conducted arms-length

3

negotiations, going back and forth between the parties first through the mediator, then through conferences between counsel.   After plaintiffs made a couple of settlement demands, they submitted an offer to defendants that defendants accepted.   The settlement resulted from both sides recognizing the strengths and weaknesses of the case, the likelihood that the case would involve extensive litigation and attorney's fees, and that both sides faced risks if the case proceeded to a trial.   Ms. Adams testified that she believed the settlement was fair and reasonable, that she was not threatened or coerced into agreeing to the settlement, and that she wanted the Court to approve the settlement.   I find that the settlement was honestly and fairly negotiated.

I also find that there are serious questions of law and fact which place the outcome of this litigation in doubt.   After some discovery, the parties realized that litigating this case likely would be both complicated and protracted.   Ms. Martinez advised that had the case gone forward, defendants would have filed dispositive motions based on qualified immunity.   Both officers testified that Mr. Bailon's actions posed an immediate threat of harm to human life.   If the Court dismissed the § 1983 claims, the only remaining claims would have been claims under the New Mexico Tort Claims Act ("NMTCA").   Under the NMTCA, considerations of comparative fault could have left the minor child with less than the sum negotiated in the settlement agreement.   Based on the facts outlined by the parties, a jury reasonably could have concluded that the decedent was partly or mostly responsible for the incident that caused his death, which would have reduced any recovery on the tort claims.   In addition, the minor child's loss of consortium claim likely would have been limited because the decedent did not have a close relationship with A.B.   The settlement provides for the best possible outcome for the minor child, considering the weaknesses of the tort claims.

4

If the Court denied the motions for the § 1983 claims based on qualified immunity, the defendants would have been entitled to take an interlocutory appeal to the Tenth Circuit, which would have caused substantial delay and could have resulted in a reversal of any decision that denied qualified immunity to one or both of the officers involved.   Even if the § 1983 claims eventually were tried before a jury, the value of any recovery on those claims was highly uncertain.   Counsel explained that plaintiffs would have difficulty proving both liability and damages.   Plaintiffs' only eyewitness to the incident became irate and walked out of her deposition, and would not have been a helpful witness for the plaintiffs.   Further, the decedent's prior criminal record and recorded telephone calls during his incarceration were damaging to the decedent's character and plaintiffs' claims for loss of consortium.   Defendants' counsel agreed that there were significant questions of law and fact as the officers would testify that they believed the decedent was a threat to their safety and the safety of others, and that they shot him in self-defense.   I find there are serious questions of law and fact which place the outcome of this litigation in doubt, including the amount of any future recovery.

I further find that the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.   At the hearing, parties explained that given the uncertainty of a favorable outcome, the certainty of a lump sum payment now was far better than the possibility of receiving less or even nothing should the litigation continue.

Plaintiffs' counsel's fees, and Ms. Adams' fees, and costs—all of which have been greatly reduced—will be paid from the settlement proceeds, as is standard in these types of cases.   The fee agreed to by plaintiffs' counsel is fair and reasonable, given the amount of the settlement.   The attorneys' fees are less than the percentage that typically is charged in these types of cases, and it is substantially less than what the attorneys had billed in the case.   The

5

costs also are reasonable, given the amount of work that has been done on the case to date, including significant expert fees.   The total recovery amount is $125,000, plus an additional $7500 from an IPRA case.   The plaintiffs and their attorneys have agreed that from the total settlement proceeds ($132,500), $50,000.00 will be used to pay the costs of the case.   The remainder of the settlement funds—$82,500—will be divided into four equal parts and distributed in equal amounts to plaintiff Jamin Bailon, A.B., Mr. Davis, and Mr. Chavez ($20,625 each).   A.B. will receive an immediate payment of $7,500.00 from her share, which will be used to purchase a used vehicle for A.B.'s transportation to and from school so that she can continue her education.   The remainder of A.B.'s share will be put into a CD to which she will have access in three years.

Both counsel and Ms. Adams believe the settlement is fair and reasonable, and I agree.   I find that the settlement is in the best interest of the minor child, and that the distribution of the settlement proceeds also is in the best interest of the minor child.   I find that the *Jones* factors are satisfied.   I therefore approve the proposed settlement between plaintiffs and the County Defendants as it relates to the minor child.   Specifically, the settlement amount of $125,000 is approved, the attorney fees and costs are approved, and the net settlement of $20,625 for A.B. is approved.   The parties will file closing documents no later than Thursday, October 1, 2020, absent a written motion showing good cause for an extension.

**IT IS SO ORDERED.**

_____

Laura Fashing
United States Magistrate Judge
Presiding by Consent

6